17-2159, Ms. Rickenbaugh, and Mr. Darrow. Mr. Darrow, will you take your time setting up? Good morning. May it please the court, my name is Jessica Rickenbaugh. It is my privilege to be pro bono counsel for appellants, the mothers and children in this matter. Seated with me at counsel's table today is my co-counsel, Bridget Cambria. I ask the court reserve two minutes of my time for rebuttal. Very good. It's no problem. The children's S.I.J. status will become an illusion without a preliminary injunction to stop Immigration and Customs Enforcement from removing the children. Removal is at odds with Congress's determination in establishing the eligibility criteria for S.I.J. to protect children like these. Let's focus on the plain language of the statute here in terms of jurisdiction stripping. Because I take your argument to be that we're not reviewing the determinations made under 1255 B.1. Or we can review whether a petition was ordered removed under such section because that section doesn't authorize extra removal for aliens who are paroled. And these aliens have been deemed paroled by virtue of their status. Is that the essence of your argument? Yes, it's the essence of our argument. I would add also that 8 U.S.C. 1255H confers another significant benefit here that in determining whether the children are admissible as immigrants, it says that lack of entry documents will no longer be a bar to admissibility. So why doesn't that make this a challenge after the fact whether these aliens are admissible? And we're told under 1252 E.5 specifically that we can't review whether petitioners are no longer inadmissible or entitled to relief from removal. So 8 U.S.C. 1255H gives these children parole into the United States. So we're not asking the court to determine admissibility. And because 1255H says that lack of entry documents cannot be a bar to admissibility, when USCIS gave these children S.I.J. status, that made the expedited removal orders unenforceable as a matter of law. But help us work with the language of the statute because it focuses us. It's written in the past tense. We're looking here at whether the petitioner was ordered removed under 1225 B.1. And you don't dispute. We've held in Castro that they were ordered removed under that section. That's correct. They were ordered removed, and we're not challenging the initial entry of the expedited removal orders. What we're saying is that 1252E gives the court the ability to decide whether the children are ordered removed now that USCIS granted them S.I.J. status. When you look at E.5, it says, the court's inquiry shall be limited to whether such an order, in fact, was issued. It clearly was. And whether it relates to the petitioner or, in this case, petitioners. And there it clearly was as well. Can we go beyond that? Yes, because what is presented before the court today is a legal question. We're not asking the court to do anything that is beyond what 1252E allows. We're not asking the court to go into the facts of what happened here in issuing the expedited removal orders. What's before the court today is purely a legal question. Whether once USCIS gave the children S.I.J. status, that they are still considered ordered removed. That's to say they're no longer inadmissible, or that the application, the operation of the order would now be unlawful. But those are all things the statute tells us on its face that we can't review if the order was, in past tense, entered lawfully. Granted, it may seem nonsensical or create significant tension with the rights that are given in other parts of the statute to these types of aliens. But isn't that what the statute says on its face? And we've construed it strictly in Castro. And picking up on that, back to E-5, there shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal. And the jurisdictional bar extends to all claims relating to the operation. So, when the children received S.I.J. status, it didn't make them admissible automatically. What it gave them is parole. And so we're asking this court to determine that they're now allowed to remain in the United States because of parole. Why isn't that an argument that they're now entitled to relief from removal? Which, again, we're told on the face of the statute, we can't review if the original order was lawfully entered. We're not asking this court to give the children relief from removal. When U.S.C.I.S. gave them S.I.J. status, that made their orders of removal unenforceable as a matter of law. But we're asking, the government already made those orders unenforceable as a matter of law. What we're asking this court to decide is that the children may remain here because of those rights that they have by virtue of their S.I.J. status. I'm sorry. Does the deeming of parole, is that then the key to your argument that we have to find? We have to disagree with Judge Diamond's interpretation of that. Yes. In terms of what deemed parole meant, we believe that Judge Diamond's interpretation of deemed is incorrect. Deemed is significant because Congress gave all S.I.J. recipients, regardless of the type of removal proceedings that they had been put into, the right to remain in the United States. And this is significant in contrast to other types of parole, like humanitarian parole under 1182D5. Because there, an individual has to apply with the Attorney General to seek parole. It's done on a case-by-case basis. But it's deemed parole for purposes of 1255A. It's limited by its terms to that purpose. Don't we have to honor that statutory language as well? So that statutory language is significant. It gives the children another benefit, the ability to apply for LPR, lawful permanent residence. But it does not say when children need to apply for that right. It does not say that the children must apply in order to be deemed paroled into the United States. Significantly, this language is not only pertinent to children that have expedited removal orders, but it's important for all children with S.I.J. Because if you take the government's argument at its word, what it essentially means is that ICE could decide at any point before someone has a visa, an LPR, to remove a child with S.I.J. status. There's no reason under the S.I.J. statutes to treat children differently based on the type of removal proceedings that they've been placed into, either expedited removal or standard removal. Remember, it's at the government's discretion whether to place a child in expedited removal or standard removal proceedings. The basis of these children's expedited removal orders or lack of entry documents could usually be a reason that someone is in standard removal proceedings. Is there any statutory language other than the deemed paroled for purposes of 1255A that would suggest that Congress was granting parole to the S.I.J. aliens? What we're relying on here is 8 U.S.C. 1255H. But other courts have found that this language conferred that benefit, the ability to remain here in the United States, Garcia and the Ninth Circuit. I think it's also important to point out that Immigration Customs and Enforcement has been proceeding as if that is the language, that is a benefit that's conferred by S.I.J. status. As we've submitted in the court below an affidavit attached to our briefing, that in the experience of immigration attorneys, once someone with expedited removal and is in detention receives S.I.J. status, ICE has historically let those children out of detention without any impetus by a court order. They've done that on their own, and the government has not argued here that it's previously removed a child with S.I.J. on the sole basis that they had a pre-existing expedited removal order. If we weren't persuaded that being paroled for purposes of 1255 means paroled, does the order that they are paroled or conditionally paroled, if it was in the 28-J letter, does that change the landscape so that they are now aliens who in fact are paroled or are physically paroled? So conditional parole is somewhat different than regular parole. The children and the mothers, because of the recent immigration court decisions, are letting them out on bond. That conditional parole is distinct from actual parole. Conditional parole does not necessarily give them rights to apply to adjust their status to LPR. There are other courts that have addressed this question of what exactly does parole mean, like SUCAR in the First Circuit. The purpose of parole here, which is why it's significant and distinct from the children's ability to file for LPR, is that it's about getting a child in an administrative process because you can't get LPR simultaneously at the same time you get S.I.J. in most instances. There has to be an investigation about whether a child meets the requirements for LPR. And that's why this statute, 8 U.S.C. 1255H, confers two benefits, the benefit to allow the children to be paroled and remain in the United States while there's that investigation of whether they actually meet the criteria for LPR. You answered your historical question earlier as to whether your argument hinges on their paroled status by saying yes. I take that that's as to your statutory construction argument. It doesn't hinge on that if I understand your argument correctly as to your suspension clause argument. If we conclude that we are strict of jurisdiction and we move on as we did in CASPER to consider whether these aliens are entitled to invoke their constitutional rights and if there are alternative remedies available, whether or not they are paroled or deemed paroled is not dispositive of those constitutional questions. To a certain degree, I would say that because they have statutory rights, they have constitutional rights, and because they have, as this court said in DOV-Ashcroft, and because they have those rights, if this court were to decide that 1252 strips the court of looking to enforce their SIJ rights, then there's a constitutional issue because then there would be no forum in which they would be able to vindicate their statutory rights. That's when the suspension clause needs to be invoked to enable the children to vindicate those constitutional rights. That's something that the court considered in Castro, if you look at footnotes 13 and 32, that there could be situations in which noncitizens have constitutional rights, and therefore that the suspension clause would operate to allow them to vindicate those rights. Although footnote 33, the example it gives is someone who's been here for several years, right? Yes. So I don't think footnote 13 necessarily addresses this particular situation. This particular situation, though, it's clear they have statutory rights by 8 U.S.C. 1255-H. That means that they have something more than they had in Castro. But how does that change whether we seem to be drawing the line in Castro or interpreting the plenary power cases, the finality of our cases, to draw a line at initial entry? What is it, do you agree with that? Is it the initial admission or initial entry where that category of aliens who is not yet admitted doesn't have the ability to invoke their constitutional rights, including the suspension clause? Or is there something between that and permanent residence, long-term residency, that you're arguing would provide sufficient connection to the United States for that sort of standing? Absolutely. That's what SIJ status does. It gives them something more than just aliens stopped at the border because they have those rights under 8 U.S.C. 1255-H. They have the right to remain in the country and the right to file to apply for LPR. It's also important that this right to file for LPR is not something that's given necessarily to all humanitarian parolees. A humanitarian parole could last only as long as the circumstances for humanitarian parole exist. But here with 8 U.S.C. 1255-H, the Congress' language deemed for purposes of subsection A, paroled until United States has significant meaning. It means they get to stay here. It doesn't mean that they only get to stay here if they file for LPR. That's not what 1255-H says. But doesn't the header to that section that talks about special immigrants generally also says that those special immigrants are deemed paroled for purposes of the statute? So you seem to be suggesting that there's a narrow approach that you would have us take to saying that the special immigrant juveniles may have this kind of standing and connection to the United States, but not everyone who is paroled. But wouldn't this open the door to all special immigrants given the language of the statute? No, this language, 8 U.S.C. 1255-H, is particular to special immigrant juveniles. So it's not for all special immigrants. Remember, too, how special immigrant juveniles get their status. They have to go before a state court, and the state court has to decide that, one, that the child has been abused, abandoned, or neglected by one or more parents, and, two, that it's not in their best interest to be returned to the countries from which they came. Then the child must go and apply to USCIS, another federal agency under DHS, the Department of Homeland Security, and that USCIS must agree that the children meet the criteria for SIJ status before they give it to them. Now, I'm afraid I missed the first part of your answer to Judge Cross. What is it that would distinguish the SIJ applicants from other special status individuals if we were to follow your reasoning here? That is, my question is essentially the same. Would this open the door to everyone who is in a special status and not just the SIJ status? No, because AUSC 1255-H is particular to special immigrant juveniles. But are there other sections? 1255-G, for example, on special immigrants says, in applying the section to a special immigrant, described in Section 1101-A27-K of this title, such immigrants shall be deemed for purposes of Subsection A to have been paroled into the United States. If being paroled for purposes of 1255-A is enough, then wouldn't the disconnection that you're arguing for, wouldn't that mean every time this language appears, that type of special immigrant would also be in a position to invoke those constitutional rights? It would mean to have that particular language, yes. But remember that if the children would be removed, that their ability to file for LPR, the right to remain in the United States and not be returned to a country where it's not in their best interest, that LPR application would be abandoned by regulation and they'd have to seek another way to come back to the United States through consular processing. But once they're removed from the country, they'll be barred, and Judge Diamond recognized this, for 10 years from returning to the country. Is that a 5-year or 10-year? It's a 10-year thing. It's a 10-year thing? Okay. There's one that's 5? Yes, there's one that's 5. Okay. Okay, but I think further you wanted to mention. I'm sorry. Go ahead. One other question. If we focus on the substantial connections that we talked about in Castro, can it be argued that these procedures in juvenile court, and I gather we have adjudications in these cases before us now already that have established them. Does that help you in establishing those substantial connections, the fact that you've been through the juvenile court, or is that not relevant? It's absolutely relevant, Your Honor. It's yet another reason why they have a substantial connection here to the United States, because it's part of the process. In order for them to be able to even apply for SIJ status, they need to go and seek those orders from the state court. Before I conclude, I think there's one other point that bears mentioning, and that is that this jurisdictional question would mean, if you buy the government's argument, that there's a basis to treat children with SIJ differently based on the type of removal proceedings that they've been placed into. And there's nothing in the SIJ statutes that suggests that you should treat children with expedited removal differently than children who have been placed into standard removal proceedings. Remember, the basis, the fact that entry documents, that these children were placed into expedited removal proceedings, could also be a reason that someone is placed into standard removal proceedings. And there's no reason under the SIJ statutes to treat these children differently. Going back to the standing question, to the connections, and where is there any support in Supreme Court precedent, or perhaps in the language of Castro, that would suggest that those who are still seeking admission, that is, even if they've been deemed admissible but not yet admitted, would have sufficient connection. How do we gather that, given the language of cases like Landon? Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly, a continuously present alien is entitled to a fair hearing. On the one hand, in cases, including Castro, that say seeking initial admission near physical presence in the United States is not sufficient. What cases can you point to that might offer support for your argument that there's something in between? One of the better cases that I can point you to is DAV Ashcroft, which explained that non-citizens, to the extent they have statutory rights, they have constitutional rights, and because the children have SIJ status, and because 8 U.S.C. 1255H gives them rights, they have something more than our just alien stopped at the border seeking initial entry into this country. And they achieved that connection because of the fact that they went to a state court to seek a predicate order, which would allow them to go apply to USCIS to obtain SIJ status. Are there any other cases besides this one you would focus on? I think also that Matthew V. Diaz, a Supreme Court case that explains that non-citizens have due process rights, is another important case for the court to consider. And that Webster v. Doe is another Supreme Court case that explains that if Congress had intended to strip constitutional rights from someone, they need to make that clear. These cases can be read together to give these children, to allow this court to vindicate the children's SIJ rights under 1255H. The government believes that you did not raise the suspension clause issue in proceedings before the district court. Is that correct? No, that's not correct, Your Honor. When we filed our motion for a TRO below, we argued that all of the claims in our complaint gave us a right to the TRO, including the constitutional and APA claims. And the government answered each of our claims in their response. Those arguments have been preserved because of that. Could I also clarify the scope of relief that you're seeking? I gather you're not asking for injunctive relief that these petitioners stay in the United States pending the availability of the visa, but only that the expedited removal order be enjoined and petitioners proceed with traditional 1229A removal proceedings. Is that right? That's correct, Your Honor. Thank you. Thank you. Mr. Darrow. Good morning, Your Honors. My name is Joseph Darrow. I'm here on behalf of Appellees. Your Honors, all of these children have now been paroled. Is that correct? They've been ordered released by an immigration judge. In that context, somebody has, some bodies, in effect, have made up the line a decision that sending these children back to the Central American countries would put them in significant harm or possible danger of even being murdered. Is that right? Not exactly, Your Honor. If you're referring to the SIJ analysis, that looks at a custodial determination regarding a placement in the home country. The expedited removal proceedings that all of appellants were in throughout the Castro case, that determined whether they would have that credible fear of persecution or torture upon return to their home country. What is that SIJ status? What kind of determination do you have to make in order to confer SIJ status? There must be a finding that the person was abused, abandoned, and neglected by one or more of their parents. There has to be a placement of the person in the custody of a juvenile court. And there must also be a determination that a placement of the child in the home country would not be in the child's best interest. However, I'll note that Congress specifically created the Department of Homeland Security to have two separate branches, USCIS, which adjudicates immigration benefits, and Immigration and Customs Enforcement, which handles removal. There is no element in the SIJ inquiry that looks to see whether you are removal or have a final order of removal, or in this case, a final order of expedited removal. The inquiry regarding this ability comes in the next step, when you seek to use your approved SIJ petition to apply for adjustment status. Before we go there, Judge Amber had asked if these aliens had been paroled. You answered that they had been released. Had they been ordered paroled? Your Honor, it's unclear at this moment what authority the IJ ordered them to be released under. Specifically, the order addresses the Flores Settlement Agreement, which regards custody of juveniles in immigration proceedings. The Department of Homeland Security disagrees with that reading of the Flores. It's a novel interpretation. It's never been extended to people. I understand that, and you've appealed, but did the IJ order them paroled? The IJ referenced the conditional parole authority under Section 1226C, yes. But no aspect of the statute that regards parole, either that statute or Section 1182D5A, permit an IJ to order a person paroled. That's a discussionary determination within the purview of the Department of Homeland Security. The specific authority that the IJ references there is the Flores Settlement Agreement. But it's also within the province of Congress, and hasn't Congress provided that this class of aliens be deemed paroled once they've met the criteria for SIJ classification? Yes, Your Honor, deemed paroled for purposes of Subsection A of Section 1265. And there are a few things here. Subsection A, of course, is the process that defines the adjustment of status application process. And as the district court noted, this deemed parole is a legal fiction that provides a platform for somebody who would otherwise be ineligible for just status because they unlawfully entered and remained in the country. It provides them this legal fiction of a platform to apply for adjustment of status. What does this deem paroled means paroled for purposes of this question? And that is, do you agree, does the government agree that if these aliens were in fact paroled, that an IJ could not lawfully now, today, issue an expedited removal order against them under 1252B1, the 1225B1? I mean, that's somewhat removed from this case, but I think we would still say no. And how is that, given that that section applies to aliens who have not been admitted or paroled? That's admitted or paroled at the point in which they are apprehended by immigration authorities at or near the border and placed into proceedings. Once that already happened, then there's no dispute here that that happened prior to any of these SIJ proceedings. Once that happens, the Department of Homeland Security, of course, has authority to subsequently parole them into the country under Section 182D and also for those in expedited removal without a positive criminal peer finding under ACFR 235.3. So what happens subsequent to the initial apprehension and determination of any disability is entirely separate from the status that they're encountered in. And as the Court noted in Castro, the legal fiction, the entry fiction rather, persists and is a viable construct today. And that says that no matter, you know, how you end up in the interior after you've already been placed into immigration proceedings, whether you are paroled in, whether you're detained inside, whether you're released for the course of your proceedings, we construe your rights as they were when you were initially apprehended at or near the border, as a concierge were. Where in statute do you take, I mean, the moment there's an encounter at the border, no one is admitted or paroled. Those determinations as to admission and parole are things that, in many cases, take place after the encounter, through some, through interviews, through further investigation, through an application process. Are you saying that there's no moment other than the moment of encounter when the government can make a determination whether someone is admitted or paroled or subject to an expedited removal order for that matter? No, I wouldn't say that there's no moment other than that. But once you've gone through the initial processes at the border and your determination has the first officer that you encounter, we'll generally determine whether you have any entry documentation or authorization to enter, and that's with finding invisibility under Section 1182. But that first officer can't make an SIJ determination. That, by necessity, has to be made later. So, I mean, what, from your perspective, you could argue that, hey, they have an expedited removal order, and this is just an end-to-round, the flip to that is that they're entitled to SIJ status, and just by necessity, just the way time works, you can't have SIJ status conferred until after an expedited removal order is given. A few things, Your Honor. SIJ does not confer any lawful status that permits you lawful presence or to remain here. Well, you're deemed paroled, which means, my guess is, you're regarded as paroled. And, in fact, the immigration judge, I guess others have said that they are to be released, and you've repealed that. And I guess the BIA has said that you don't have to post a bond or something. Is that correct? Somebody doesn't have to post a bond. The IJ released them without a posting bond. Right. Yes. And so the question becomes, well, obviously, we have the Castro case, and it's a pretty tough case, but there is some wiggle room, which has been noted in the Castro case. And the question really becomes, does this case, does being given SIJ status, fit within that, quote, wiggle room that I mentioned? And it would seem that if they have, if they've given these rights, and if they are removed from the country, they can't come back for 10 years, and they can't wait for the next year to see if there's availability for somebody to come in. They've lost a very significant right. Well, Your Honor, a few things on that. The 10-year inadmissibility bar that accounts refer to, that only kicks in if you're removed and then you attempt, you either legally reenter or attempt to illegally reenter, and then you are found in the country and determined removable again. Without first being admitted, and you are inadmissible if you have been removed, pursuant to a 1225B1 order for five years, so a minimum of five years, and then they have to be admitted in order to make it not 10 years to try to reenter, and while physically present, for example, put in any application for adjustment of status. Right? Am I reading the statute correctly? So you're right. The five-year bar would apply, although there's a process for which you can apply for consent to still apply for a green card from abroad. There's a Form I-212 that they can file. But that consular visa process to which you point to say that they're not losing your status, that's an employment visa that you seek from abroad, right? The platform's also there to use it to apply based on an approved SIJ petition. But the SIJ petition, and that gives a certain priority under Section 4 employment visas. How is that of any assistance to a four-, five-, or six-year-old that is currently in the United States seeking to adjust status, has put in their application, has been deemed paroled for these purposes, has been eligible for a visa, and admissible, and is simply waiting for a visa? Don't they lose something if they're sent off and they can't come back for five or ten years? Well, so again, we read the ten-year bar as saying only if you attempt to legally re-enter after you've already been ordered to move. And you're entering that admission, as you note, then the ten-year bar exists. The gist of the question is, isn't a valuable right lost? No, Your Honor. The approved SIJ petition can still be used as a base to apply for a green card from abroad. As you note, that speaks to employment-based visas, but that's actually, the SIJ is considered part of the fourth employment-based preference in allocating immigrant visas. So that's how it would fit in. Excuse me. So are you saying the application for adjustment is abandoned but not the SIJ status? The approved SIJ petition still exists, and actually appellants would file a form with USAID asking them to forward it to the National Visa Center, which would then reach out to the appropriate embassy or consulate to schedule an interview for a potential grant of the immigrant visa. The SIJ petition might still be re-examined again when it's forwarded to the Visa Center for processing, but the approval, they don't have to go through the whole SIJ process again. So what rights, if they are removed, what rights, after having been conferred SIJ status, what rights remain? The right to use the approved SIJ petition as a platform to apply for an immigrant visa to be later entered and be re-admitted as, or to be admitted, rather, as a local permanent resident. That's a work visa, correct? Employment-based visa, isn't it? There's a work authorization that comes with receiving an approved SIJ petition, but what they're applying for is actually an immigrant visa that would directly entitle them to a green card, if they were here. That's what the structure that Congress created allows. That's the benefit of SIJ status. It allows you to adjust to a green card, and it would be considered an immigrant visa if done through the Council of Processing, is how I've been told the process would work by DHS. Let me back up. What rights are given to them? What rights remain if they are removed, and what rights are lost? What rights remain, let's start with that. What remains is the ability to use the SIJ platform to apply for a green card. Otherwise, they are people who entered unlawfully and were removed, and there's no visa petition basis, no hook. SIJ gives them the hook to apply for the discretionary grant of admission as a local permanent resident, and then what rights are lost? In our view, none. SIJ doesn't confer any right to remain in the country pending adjudication of the adjustment of status application. The immigrant visa you just mentioned, having been removed on an expedited removal order, the SIJ applicant couldn't even be admitted with that for five years. Is that right? Yes, but there is a very enshrined process for applying for consent to waive that immutability bar and reapply within the five-year period. Is it really the government's position that with these children pursuant to a protocol set up by Congress have been designated as neglected, abandoned children in whose best interest it is not to return them to their country, but to be returned for a minimum of five years or more is not losing a valuable right? SIJ does not confer a legally cognizable right to remain. Their rights to remain in the country were adjudicated through the credible fear and expedited removal process. The SIJ status, with that status, they are deemed paroled for purposes of 1255A, right? Yes. And that's for the preface to that section, but it also means that they are eligible to receive an immigrant visa and they're admissible for permanent residence. Numerous grounds for admissibility are automatically waived, right? Some are, yes. There are still others that could possibly apply. And the government here doesn't challenge that any of those others do apply? No, not in this case, no. Now, the statutory language, I take it you would agree, is mandatory here. They shall be deemed paroled. In contrast to humanitarian parole, for example, where the language provided by Congress is discretionary that they may be paroled. That's correct, Your Honor. And the grounds for admissibility it provides shall not apply to them, again, in mandatory language in contrast to discretionary language for the AG providing them for humanitarian purposes. That sort of waiver, correct? Correct. And there are also the SIJ status under the regulations interpreting the statute cannot be revoked. I've seen certain limited automatic revocations, such as Marriage Attorney 21. They cannot be revoked without notice and opportunity for the alien to oppose the revocation of that status at hearing, right? That's correct. But DHS does not need to revoke SIJ status to execute the final or expedited removal. As the Sixth Circuit noted in that case, we cite Gowdy and Jennifer, that receiving an approved SIJ petition does not restrain or compel the government with regard to executing removal or removal proceedings. So they're currently eligible. I mean, as we just went through those things provided by the statute, they are currently eligible for an immigrant visa. No, they're not eligible yet for a number of reasons. First of all, there's no immigrant visa number available to them yet. No, no. I didn't say that they are entitled to it or they're entitled to that they've qualified under all of the criteria under 1255A. But Subsection 2 provides they are eligible for an immigrant visa. Sub 3 says that visa has to be available, but these immigrants or these aliens are eligible for an immigration visa when it becomes available, right? Eligible meaning the sense that they've stepped onto the path and they're eligible to apply, but not eligible in the sense that they've met all the requirements that would guarantee them grants of an immigrant visa. The only one being that the visa is available. But there's also a discretionary component in the adjustment of status determination outside of the immigrant visa being available. There's no question the AG has ultimate discretion, but is there any basis that you have identified that these aliens are not eligible for an immigrant visa if one becomes available tomorrow? If an immigrant visa were to become available tomorrow, then it would simply be the government's discretionary power to say yes or no. And that, you know, we can't speculate as to whether that would be granted or not. And they are also currently, because of their status, they are currently admissible. They've been deemed, they've been determined inadmissible. They are for purposes of applying for adjustment of status under the legal fiction of Section 1255. We would look past that prior finding of inadmissibility. That's the parole. As we discussed it a few minutes ago, you agree that they are, according to the statute, and it's a mandatory language, those grounds for admissibility do not apply. And the other grounds, none of them, the government has identified as applicable to these particular aliens. So currently, if a visa becomes available, it appears there's no bar to them getting it, other than the ultimate discretion of the Attorney General, right? The language you're on a site is prospective. It looks forward. There's no, you know, we are going to look past you. We'll say you're not admissible, but it's not retroactive. It doesn't look backwards. Isn't that exactly the problem? If they're removed pursuant to a 1225B1 order, because they, while they currently are eligible for that visa, if it becomes available tomorrow, again, subject to discretion, and they are currently admissible from the answers that you provided a few moments ago, the moment that they are deported pursuant to an expedited removal order, both of those vanish, at least for five years, right? They are, they've been determined inadmissible. They would just be viewed as admissible. The question is did both vanish, yes or no? What was the first part besides the admission part then? Once they are deported pursuant to an expedited removal order, they are no longer eligible tomorrow to receive an immigrant visa if one becomes available. No, that's not true. They could still, they're still in the queue based on their priority date, which was based on when their SIJ petition was approved for, or was accepted for examination. Under the immigration code and the regulations, and correct me if I'm misunderstanding them, to apply for a pending application for adjustment of status under 1255A to have any currency, they have to be within the United States. Once they are deported, they cannot seek to adjust status under 1255A, right? Correct. They can't adjust status, but they can still apply for the same ultimate benefit, which is lawful permanent residence. It's just through consular processing as opposed to adjustment. Adjustment does speak to only people who are here in the country internally, but it's the same benefit. They lose the right that they are provided under 455H to pursue their pending application for adjustment of status, right? They cannot directly pursue the application for adjustment of status, correct. And they can't pursue adjustment of status while in the U.S. because they can't come back to the U.S. without first being admitted. They can't re-enter for 10 years, right, without having been admitted on some other basis. They would be subject to the 10-year bar if they attempted to unlawfully re-enter within 10 years. Right now it's just the five-year bar that applies, and they can apply for a waiver of that, which is something that happens quite often. They would need to be admitted in order to re-enter and not have the 10-year bar apply, right? The 10-year bar would apply if they attempt to enter without admission, which would be unlawful re-entry, yes. So if they attempt to enter without inspection of the border, you know, then the 10-year bar would kick in, but we're not going to impute to them the intent to enter unlawfully. I'm a little confused. They're sent back to Honduras under the expedited removal. What can they do within the five-year period? They can file the form that would ask USCIS to refer their approved SIJ petition to the National Visa Center and begin the council processing to apply for admission as an immigrant on an immigrant visa as a lawful immigrant resident. And they can also file a form that – and this would be prior to filing that – they would also file a form with USCIS that requests consent to re-apply within that five-year period, to essentially waive that five-year ban. And they still would have their SIJ status? They would still have approved SIJ petitions. So in effect, is what you're saying that if they're removed, it may only be five years, and they are not out of the queue for seeking adjustment of status? Not adjustment of status. No, that would only be for seeking the ultimate benefit of adjustment of status, which is lawful criminalized LPR status. But there are other avenues for them to come into the United States from Honduras or El Salvador within that five-year period? Other avenues, I mean, if they have a relative in the United States and they seek to get an immigrant visa in that fashion outside of SIJ, potentially, although I don't know all the facts and circumstances, they still at that point need to file the form requesting consent to re-apply for admission because of their removal under Section 1225B1, assuming they wanted to come back within that five-year period. But what happens – let's say it is only five years, and these particular juveniles have been determined to be in a position where if they were to go back, it would not be in their best interest, among other things, they could be harmed. And isn't there a human – and let's say in these particular countries, which are having some real issues, but there's a good likelihood that they will be harmed. Isn't there a humanitarian concern? It looks like that's what Judge – Immigration Judge Gerling and others were expressing, that they need to stay here until this process plays out. I think Immigration Judge Gerling was speaking more to whether they would be detained while the process plays out. But shouldn't – my question to you is shouldn't they remain here at least until this process plays out, until there's a determination? It's a determination in the discretion of the Attorney General, is it not, ultimately? As to whether they get LPR status. Yes. Yes, that is. But they have now very longstanding final orders of expedited removal. It's in the government's interest to apply the law even-handedly to all persons who come across it. And as, you know, the Supreme Court – Even if they're harmed when they go back? Well, Your Honor, we would say that that's what the credible fear screening process is for, to look and see whether you're going to be persecuted or tortured. And all the people we're dealing with here went through that process very thoroughly. And the orders that arose from that process were affirmed time and again by this Court all the way up to the Supreme Court. But at the same time, right after that, SIJ status has been confirmed. But it's not in their best interest to go back to their country of origin? Yes, but by a different sub-component of the government, not looking at whether they were – they had final orders of removal, and also not asking the persecution or torture question. It's just looking at the custodial placement determination. Is it the government's position that if the Indians had SIJ status, that an immigration judge with that information could, as authorized by the code, could enter an expedited removal order under 1225B1? Well, if they had – SIJ was designed to provide a platform for children who are unlawfully present, who Congress, you know, very rightfully felt sympathetic for, considered abusive and neglected, to apply for adjustment of status. It was speaking of children who are already inside the country. And Congress, you know, is authorized to treat aliens outside the country and inside the country very differently. The Supreme Court has said in many cases, like Matthews v. Diaz, which appellants cite, that it's not irrational for Congress to treat aliens who are encountered in the interior who are more similar to U.S. citizens because they lived here for a period of time differently than aliens who are just coming to the border or apprehended at or near the border. I'm not sure I understand your answer. If these aliens had already been classified as special juveniles, is it your position that the government, nonetheless, could seek to put them in an expedited removal proceeding and that an immigration judge under the code would be authorized to enter a 1225B1 order? I don't know exactly how that scenario could happen because in order to apply for SIJ status, they'd already have to be inside the United States. They'd already have to go to a state court to get the predicate findings. If they're already in the United States long enough to do that, then expedited removal is not going to apply to them. That's only for people who are stopped at the border or apprehended within 100 miles and 14 days of entry. In my mind, it doesn't seem at all possible that somebody who had been here for less than 14 days would already have gone to a state court to get the predicate findings to apply for and then obtain SIJ status. So, is your answer then that if the government sought to do that, that the NIJ who entered such an order would be entering an ultra-virus order? That is, they would not be authorized by the statute to enter an expedited removal order against someone who had SIJ status? Well, IJs don't actually enter the expedited removal orders. The order was made by the agency officer at the border. First, the terms are immiscible, and then you go for an interview with an immigration asylum officer at USCIS, and that's where the determination of whether you are expeditiously removable is made. Under the expedited removal regime, you get reviewed to an immigration judge, but he or she is not making the initial determination whether you are expeditiously removable. They are just affirming the finding of no credible fear by the asylum officer. That is, and I think we have one in this case, that is the order of removal, the expedited removal order that's at issue in this appeal, right? Yes. So, they were all affirmed by an IJ. They were affirmed by an IJ, and maybe this is a technical point, and I apologize for going down this road, but I was just seeking to say that the immigration judge would not be ordering expedited removal as an initial matter. He would just be reviewing the agency's determination of whether you are expeditiously removable. So, if an immigration judge were to say that you are removable under expedited removal, that would be outside of the structure that Congress created. There's not any case where someone with SIJ status has been ordered removed on an expedited basis, right? That's my knowledge. And is there any case where an alien who has been paroled has been removed on an expedited basis? I couldn't name this one offhand, but certainly the scenario is very possible because the statute and regulation do provide for parole of aliens in expedited removal proceedings, while they're in those proceedings, and prior to the execution of their removal order under ACFR 235.3. So, I have to imagine that at some point they have been paroled during the proceedings or after their order was filed, but before they were removed. And are you talking about those particular exceptions, for example, for medical emergency treatment? Yes, for legitimate law enforcement purposes. That's the narrow window for those in expedited removal, and then there's the broader for humanitarian purposes under Section 183. How about the broader ones? Other than the two specified as exceptions for expedited removal, is there any case that you're aware of where an alien has been granted parole, a humanitarian parole, and has an unarmed man been put in expedited removal proceedings? After being granted parole? Not that I know of, but generally the expedited removal proceedings would come before that. The parole will only be releasing you pending, you know, while you're in proceedings, it's a way so we don't have to detain you and you can be at large if we determine that that's proper. And so that would only be after that prima facie determination that you were removable and placed into removal proceedings. And is that because under 1225B1 that the expedited removal applies to aliens who have not been admitted or paroled? Yes, it would, because, as I mentioned, the scope is simply aliens who have not previously been admitted or paroled who are coming to the border and lack entry documentation or misrepresent that. So an alien who was paroled would not be eligible for expedited removal? I would have to see what the timeline on the parole was, but assuming that it functions as it normally would, the parole determination would only come after the inspection at the border and determination of whether or not you were admissible because you had, you know, previously been in your grant-advanced parole so you could come back, or whether you were seeking initial admission and so you're admissible and we were going to parole you during the course of your proceedings. Let's assume your timeline and say an alien is paroled as they're coming into the country. That's the determination that's made. So do I understand the expedited removal provision correctly, that an alien who has been paroled is not subject to 1225B1? No, I don't think I could say that they're not entirely subject because you can be paroled prior to the final implementation of the expedited removal order. The statute regulation allows you to be paroled throughout the expedited removal process. With the limited exceptions that we just talked about for law enforcement assistance and emergency medical treatment? That's generally the reasons why you would be released on parole. And there's no other basis that is provided that would still subject someone who had been paroled to expedited removal. Those basis are just for whether we're going to release you or not. If you are encountered at the border and you are deemed inadmissible under one of the two grounds, I guess you would expedite removal, lack of entry, documentation, or fraudulent misrepresentation of your ability to enter, then you are stuck within the system. If you have a claim that you already were here lawfully, say, as a recipient of a refugee grant and then you sought advance parole and were coming back, then you could raise that in the limited review provisions and say, you know, I've been erroneously swept within the expedited removal system because I am a refugee and I was granted advance parole to leave the country and come back. That's where you would raise that claim. But whether or not you get included in the system looks to see whether you are seeking admission, and if so, whether you are inadmissible for any of those grounds. Can you address your colleague's point that the position you're taking as to SIJ status with expedited removal leads to very different treatment of children who happen to be in a traditional removal setting versus expedited removal setting? Do you see that as intended by Congress in the statutory scheme? I don't see any. I mean, Congress all the time creates different rules for aliens who are encountered in the interior after they've been living here for some period of time and aliens who are just coming to the border. So I can understand that Congress would still wish to treat those two groups of aliens differently in this inquiry as well. And like I said, SIJ is about helping out children who are unlawfully present, who have been here, who are leaving the population even if they aren't here lawfully. Congress can treat people arriving at the border, such as opponents have been determined to be in Castro, very differently and can provide less process, which would be the case here. If we were to agree with the plans in this matter that these SIJ individuals could only be deported through the standard removal proceeding, would that have any impact on other classes of special immigrants for instance defined in 1101A27? Or do you think it would be candid just to the SIJ recipients? Well, that language deemed paroled for purposes of subsection A is also included in the provision dealing with other special immigrant classes under 1255G, for instance. So it's possible, given the similar language, that that rule could have legs and apply very broadly to anybody who is seeking to get a green card on the basis of special immigrant status. Is it significant at all that under the Family Unity Program, which explicitly bars removal for children under those circumstances, as I understand it, that provision was put in at the same time as the SIJ status and it had an explicit bar of removal, where of course there was no explicit bar of removal with the SIJ status. Is that significant at all or is that just a different set of provisions for different fact situations? You know, I'm less familiar with those provisions. I think generally speaking I would say that where Congress says one thing in one instance and then you say clearly that this would be a bar on removal and in an opposite circumstance exclude that language, that would, you know, at least signify or suggest that it was less interested in conferring protection against removal in the context where it was silenced, although I'm less familiar with those provisions so I couldn't say with certainty. If we get to the substantial connections issue that was prominent in Castro, why, I understand your position is that the substantial connections here are no greater or maybe less, but why is that the case here? Why do we not have the same kind of substantial connections that we had in Castro? Well, we would say that we still do have the same degree of substantial connections, which is essentially none or at least not enough to warrant a different due process analysis. The fact that you are detained or not during the course of your removal proceedings has varying on the entry fiction, which looks to see, you know, what your position and status were when you were apprehended and placed in those proceedings. The decision to detain you in the interior or not detain you in the interior, that is a logistical determination based on detention space and other factors. That doesn't confer you rights, and there are a number of cases that discuss people who have been paroled during the course of even the very lengthy proceedings, and still they are deemed for constitutional purposes to have the rights of those at the threshold of initial entry. There's a case, Captain D. Todd, from 1925 that we cite in our brief, where a child was determined to be miserable at Ellis Island but couldn't be removed, I believe, due to the war, and so was placed with a prison service who eventually placed her with her dad. And she was, you know, growing up in the United States for eight years, and still the Supreme Court held that her rights vis-à-vis admission or removal, and then it was deportation, are only those that she had at the time of that threshold determination when she came across immigration authorities at the border and was determined to be miserable. Thank you very much. Thank you. Do you have permission to come back, everybody? If you could spend a fair amount of time in terms of if these plaintiffs slash counts are removed, what rights do they lose? They lose the ability to have their LPR applications granted, because under immigration regulations, in order to adjust their status to LPR, they need to be physically present, and that's under 8 CFR 245.1. If they are removed, those applications are deemed abandoned. The types of relief that the government is arguing that children might seek if they're removed, those aren't avenues of relief that are granted under the SIJ statute. Those are separate types of relief. And to the extent that the government argued that the children might be able to seek a waiver of the time bars, that would require them to have a qualified relative in the United States, and they don't have that, so they cannot seek those waivers. What section is that? I do not have the section offhand, but the type of waivers that they're saying they might be eligible for, that requires them to have a qualified relative here in the United States. If you would submit in the next few days a supplemental or a 28J letter that lays that out. Absolutely. I think it's also important to point out that when the children came to the United States, at the port of entry they were issued these expedited removal orders, and after that time they were given a credible fear interview. A credible fear interview only looks at whether the children are eligible for asylum on account of persecution by race, ethnicity, a particular social group. It doesn't look at this question whether they're SIJ eligible. The reason that they got SIJ status, they had to be here for at least six months under Pennsylvania law to even go to seek a predicate order for SIJ status through the state courts. So this question is something that came after they were entered, but the government's reading of 8 U.S.C. 1252 would essentially require the court to say that that statute stops time, but at any point after those expedited removal orders are entered, we can't look at what the government has done. It doesn't matter if the Attorney General has given them humanitarian parole or perhaps that U.S.C.I.S. has now designated a new temporary status category, which would allow them to stay here. We have to ignore all of that. But there are other cases that say no, that you can't ignore what Congress intended by statute. Sue Carr in the First Circuit or Subhan in the Second Circuit. I'd also like to point out that what we're asking the court to do today is not as far as some other courts have gone, including Companga in the Southern District of New York, where the question there was whether an individual had LPR status properly revoked. The court held there that there could still be jurisdiction to look at this question. Here there's no factual question at issue. These children have been given SIJ status, and the government agrees with that, and 8 U.S.C. 1255-H says explicitly what their rights are given that SIJ status. So there's no concern of running afoul of 1252 because we're not asking the court to entertain a factual question. We're asking the court to entertain a legal question about whether the children, by virtue of their SIJ status, get to remain here. And 1255-H says that they do. Can you just clarify, because in response to Judge Serka's question, we were looking at other special immigrant provisions that also provide for being deemed paroled. So 1255-G applies specifically to 1101-827-K, which is in particular for immigrants who have served honorably on active duty in the United States Armed Forces. Aside from subsections J and K, that is the special immigrant juveniles and those who served honorably in the U.S. Armed Forces, are there any other classes of special immigrants who are deemed paroled for purposes of 1255-A1 or otherwise? As I said to you today, I'm not prepared to answer that question, Your Honor, although we certainly could when we submit a supplemental letter regarding the other question. But, again, we're asking the court to look at 1255-H, which just applies to special immigrant juveniles. All right. Thank you very much. Both counsel have very well-presented arguments. I would ask that a transcript be prepared of this oral argument, and Mr. Carroll said it would be all right if the government picked up the cost for that. Yeah, I'm sure we can. Okay. Thank you very much. And you've taken this case under pro bono, and you really have our gratitude for having done so, you and your law firm. Again, both sides, really well done. Pleasure having you. Thank you.